**Margaret HODGES, wife of/and Wilson P. Abraham, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 77–1293.**

United States Court of Appeals, Fifth Circuit.

July 2, 1979.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Acting Chief, Appellate Section, Leonard J. Henzke, Jr., Murray S. Horwitz, Attys., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Peter J. Butler, Gayle A. Reynolds, New Orleans, La., for plaintiffs-appellees.

Before MORGAN, RONEY and FAY, Circuit Judges.

MORGAN, Circuit Judge:

This is an appeal by the Internal Revenue Service (IRS) from a judgment of the District Court for the Eastern District of Louisiana allowing Wilson P. Abraham and his wife Margaret Hodges (taxpayers) to recover, along with any applicable interest, the $22,331.71 paid by them as partial payment of the income tax liability of a now liquidated corporation, Paula Construction Co. (Paula Const.).

Paula Const.'s stock was owned 50% by taxpayers and 50% by Wilson's brother, Anthony. For the years 1965, 1966, 1967, and 1968 the stockholders elected to treat Paula Const. as a Subchapter S corporation. Ac-

cordingly, they reported the income and expenses realized by the company on their personal income tax returns. Subsequently, the IRS audited Paula Const.'s federal income tax returns for the years 1965 and 1966 and made a determination that the company was not qualified to report its income under the Subchapter S provisions of the Internal Revenue Code.[1] The IRS then sent Paula Const. notices of assessment and a demand for payment of taxes, interest, and penalties totaling $44,664.41. However, at the time of the assessment, Paula Const. had already been liquidated with its assets being distributed 50% to taxpayers and 50% to Anthony Abraham. When the taxpayers informed their accountant, who was also a lawyer, of the situation, he concluded that they were liable as transferees for the amount of the taxes assessed against Paula Const. up to the value of the assets which Paula Const. had transferred to them in the liquidation. He instructed them that the IRS could formally assess both the taxpayers and Anthony Abraham as transferees and could collect said taxes by filing a lien against their personal assets. Realizing that a lien would prevent the taxpayers from obtaining the construction loans necessary for the continued operation of their construction business, their accountant persuaded them to allow him to contact the IRS in their behalf. The accountant then contacted the head of the Collection Department of the New Orleans office of the IRS and informed him that in order to avoid the initiation of any collection procedures, i. e., liens, against them personally, the taxpayers would be willing to admit their transferee status and pay their share of the assessment provided that a formal assessment be made against them personally. Pursuant to this arrangement the taxpayers paid the $22,331.71.[2]

Thereafter, in preparing the taxpayers' federal income tax return, taxpayers' accountant deducted as an interest expense

---

1. This determination was affirmed by the Tax Court and thereafter by this court in *Paula Construction Co. v. Comm'r*, 474 F.2d 1345 (5th Cir. 1973).

2. Anthony Abraham, brother to one of the taxpayers, paid the remaining half of the original $44,664.41 assessment.

$7,535.66 of the $22,331.71 payment. Sometime later the IRS conducted an office audit of this return, and taxpayers' accountant, present as their representative, was requested to provide proof that a "formal" assessment had been made against the taxpayers reflecting their liability for the $22,331.71. No document could be produced which formally attached the taxpayers with liability for their $22,331.71 payment. Consequently, the IRS disallowed the taxpayers' claimed $7,535.66 interest expense deduction, reasoning that because "[a] debt owed by a corporation is not the legal debt of its stockholders . . . [t]herefore, the interest [taxpayers] paid on the debt is not [their] legal liability, and is not deductible." [3] Relying on the IRS's determination that they were not legally liable for the taxes purportedly due from Paula Const., the taxpayers filed for a refund of their $22,331.71 payment. To this the IRS replied, in pertinent part:

> We have reviewed your claim for a refund . . . . We are sorry but it cannot be allowed:
>
> According to Internal Revenue Service policy, the taxpayer is the only one to whom a refund payment can be made. Since you are not the taxpayer whose account is in question, your claim . . is not valid.[4]

The taxpayers then instituted this suit seeking the return of the $22,331.71. An answer was filed on behalf of the IRS and a pretrial conference was held which resulted in the filing of a pretrial order. In this pretrial order the IRS stipulated the material facts as being that:

> On January 29, 1973, deficiency income taxes, penalties, and deficiency interest in the total amount of $44,663.41 were assessed against Paula Construction Company for the calendar years 1965 and 1966. On July 17, 1973, payments of the full amounts of the foregoing assessments were credited against the liabilities of Paula Construction Company for 1965 and 1966. Margaret H. and Wilson P.

Abraham [taxpayers] contend that they paid 50 (50%) percent, or $22,331.71, of the total liability assessed against Paula Construction Company for 1965 and 1966. If, in fact, they made such payment, they did so as mere volunteers, since the Government had made no effort to levy upon any assets of Paula Construction Company which may have been held by the individuals, as transferees of the corporation, or otherwise. Therefore, Margaret H. and Wilson P. Abraham were not the taxpayers against whom the deficiencies at issue here were assessed, nor were they more than mere volunteers who elected to pay a portion of the tax liability of their presumably defunct corporation. On these facts, those individuals have no standing to bring this civil action.

When the trial commenced the sole defense of the IRS to the taxpayers' claim was that since the purported taxes due by Paula Const. were assessed against the corporation and were never assessed against the taxpayers, when the taxpayers paid the taxes they did so mere volunteers who had no legal obligation to pay, consequently they had no standing to sue for recovery nor did the district court have jurisdiction over this suit. This defense was the same as set forth in the pretrial order and was consistent both with the IRS's answer and the position previously asserted by the IRS in its correspondence with the taxpayers. However, during the trial, the IRS attempted to introduce into evidence a document (the 1973 federal income tax return of the taxpayers), which was not listed on the pretrial order, for the purpose of raising as defenses to the suit issues which were never set forth in the pretrial order. In fact, the IRS now sought to assert that the taxpayers were legally obligated to pay the taxes, a position diametrically opposed to that asserted earlier. Taxpayers' timely objections to both the introduction of the unlisted exhibit and to the injection into the trial of issues which were not set forth in the

---

3. Letter from IRS to taxpayers dated September 23, 1974.

4. Letter from IRS to taxpayers dated March 21, 1975.

pretrial order were sustained by the district court.

Upon the conclusion of the trial, the district court found that the potential liability of a transferee, under the circumstances of this case, removed him from the status of volunteer, and therefore, the court had jurisdiction over this matter pursuant to Title 28 U.S.C.A. § 1346(a). The court then concluded that the payment by the taxpayers was erroneously made and granted judgment against the IRS for the refund of the payment, plus applicable interest thereon.

On appeal the IRS argues that the district court erred in preventing them from developing certain issues which the court deemed to be outside of the pretrial order. More specifically, the IRS alleges that the district court should have read the pretrial order as encompassing the defense that the taxpayers owed the taxes or, alternatively, the court should have modified the pretrial order to conform to proof of the taxpayers' liability.

### DISCUSSION

Rule 16, Fed.R.Civ.P., establishes a mechanism whereby the trial court can expedite the just disposition of cases and reduce the costs of litigation. This mechanism consists of a pretrial conference and a resulting order. The pretrial conference is designed to restrict the scope of the trial by defining and therefore limiting the issues involved. And as a necessary adjunct to this function it may also provide for the limitation on the number, type, and admissibility of exhibits and testimony. Our inquiry here focuses upon the use of the pretrial order to achieve its asserted goals.

First we address the IRS's claim that the district court misinterpreted the pretrial order by failing to recognize that it encompassed the proposed defense.[5] This court stated in *Risher v. United States,* 465 F.2d 1, 5 (5th Cir. 1972): "We are not inclined to disturb the district court's interpretation of a stipulation agreed upon by the parties during pretrial proceedings and approved by the court." We think that statement applies here and for good reason. We don't believe the trial judge should, for fear of appellate correction, be forced into an overbroad interpretation of such orders. Such a practice would be inconsistent with the underlying purpose of the pretrial procedure to define and limit the issues for trial. Without the above rule all litigants would have the burden of anticipating issues whose possible presence in an obfuscated pretrial order is overshadowed by the opposing party's active assertion of totally inconsistent issues. We cannot hold that the district court acted arbitrarily in viewing the unclear pretrial order as not fairly apprising the taxpayers of the defense which the IRS later sought to assert. See *Rodrigues v. Ripley Industries, Inc.,* 507 F.2d 782, 787 (1st Cir. 1974).

We now turn to the IRS's contention that the district court should have allowed the pretrial order to be modified. To insure the effectiveness of pretrial procedure, Rule 16 provides that the pretrial order issuing therefrom "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." In keeping with this policy, the courts have usually precluded an offer of proof of a new claim or defense where it is first presented at trial without prior mention of the claim or defense in either the pleadings or the

---

5. The pretrial order reads in pertinent part: [paragraph] 8/9. The mixed questions of law and fact involved in this action are as follows:

(a) Whether the Court has jurisdiction to consider the claims of Margaret H. and Wilson P. Abraham, under 28 U.S.C. § 1346(a), since they were not the taxpayer against which the taxes at issue here were assessed.

(b) Whether or not the Court has jurisdiction to consider the claims of Margaret H.

and Wilson P. Abraham under 28 U.S.C. § 1346(a), since they were the parties who actually paid the taxes, penalties and accrued interest thereon, which are the subject of this suit.

(c) Whether or not Margaret H. and Wilson P. Abraham can recover the amount sued for on the ground that they had no legal liability to pay any part of the deficiencies against Paula Construction Company for 1965 or 1966.

pretrial order. *Pacific Indemnity Company v. Broward County,* 465 F.2d 99, 104 n. 6 (5th Cir. 1972). Furthermore, we realize that for pretrial procedures to continue as viable mechanisms of court efficiency, appellate courts must exercise minimal interference with trial court discretion in matters such as the modification of its orders. *See Syracuse Broadcasting Corp. v. Newhouse,* 295 F.2d 269, 274 (2nd Cir. 1961). Thus, we ascribe to the trial court a broad discretion to preserve the integrity and purpose of the pretrial order, *see Sherman v. United States,* 462 F.2d 577, 579 (5th Cir. 1972), and in reviewing trial court decisions which prevent the introduction of otherwise competent and relevant evidence we will not disturb the trial court's ruling unless it is demonstrated that the trial court has so clearly abused its discretion that its action could be deemed arbitrary. *See Wallin v. Fuller,* 476 F.2d 1204, 1208, 1209 (5th Cir. 1973); *Davis v. Duplantis,* 448 F.2d 918, 921 (5th Cir. 1971). Under the particular facts of this case we cannot say that the district court's actions were arbitrary, and, consequently, we deny the appellant's claim of error in this regard. *Cf. Freeman v. Chevron Oil Company,* 517 F.2d 201 (5th Cir. 1975). We also take note that any injury resulting from our upholding the district court's exclusion, putting aside issues of surprise and inconvenience to the taxpayers stemming from the admission, is a direct result of the IRS's own failure to properly present its case. *See Colvin v. United States,* 549 F.2d 1338, 1340, 1341 (9th Cir. 1977).

Lastly, we do not consider that the defense should be heard for the first time on appeal as an issue of law reviewable by this court.[6] We believe that an issue which was properly excluded at trial is also foreclosed in the reviewing court. *Wiggins v. City of Philadelphia,* 331 F.2d 521, 526 (3rd Cir. 1964).

Accordingly, the judgment of the district court is AFFIRMED.

---

6. We believe that the instant situation, where the attempted assertion of new issues has been actively passed upon by the trial judge, is to be distinguished from those situations where the issues are native to the appeal. E. g. *Jack*

*Amman Photogrammetric Engineers, Inc. v. Comm'r,* 341 F.2d 466 (5th Cir. 1965); *Comm'r v. Chase Manhattan Bank,* 259 F.2d 231 (5th Cir. 1958).