Ann WALKER, Plaintiff–Appellant,

v.

ANDERSON ELECTRICAL CONNECTORS, a Subsidiary of Square D Company, Defendant–Appellee.

No. 90–7636.

United States Court of Appeals,
Eleventh Circuit.

Oct. 18, 1991.

C. Michael Quinn, Ann K. Norton, and Robert L. Wiggins, Jr., Gordon, Silberman, Wiggins & Childs, P.C., Birmingham, Ala., for plaintiff-appellant.

John C. Falkenberry, William F. Gardner; and William K. Thomas, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for defendant-appellee.

Before FAY and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.

FAY, Circuit Judge:

Plaintiff–Appellant, Ann Walker ("Walker") appeals the outcome of several post-trial motions in which the district court ruled that Walker was not entitled to declaratory or injunctive relief, nominal damages, or attorneys fees, despite a jury finding of sexual harassment and invasion of privacy. For the reasons that follow, we AFFIRM.

## I. BACKGROUND

In August 1989, Ann Walker sued both her employer, Anderson Electrical Connectors ("Anderson Electrical"), and her union, Local Lodge 2601, International Association of Machinists & Aerospace Workers, AFL–CIO, under Title VII of the Civil Rights Act of 1964,[1] claiming that they "condoned and allowed [her] to be sexually harassed by management and personnel for a continuous period, making her working conditions intolerable." Walker also brought pendent state tort claims against Anderson Electrical for invasion of privacy and outrage.[2]

Initially, Walker's complaint contained a demand for jury trial only on the pendent tort claims. Following publication of an opinion in which the same district court judge permitted the use of a jury trial to resolve Title VII claims,[3] however, Walker successfully added her Title VII issues to the list of other issues to be heard by the jury. *Walker v. Anderson Elec. Connectors*, 736 F.Supp. 253 (N.D.Ala.1990).

In her complaint, Walker sought relief in the form of back-pay, benefits, lost seniority, loss pension, declaratory and injunctive relief, and attorneys' fees and costs for the alleged Title VII violation. Walker also sought actual and punitive damages for the pendent tort claims. At the pre-trial conference, however, Walker narrowed her grocery list of remedies by dropping her request for a declaratory judgment and an injunction. Walker's position statement, as drafted by Walker and incorporated into the pre-trial order by the court, reads as follows:

As a result of these discriminatory actions of the defendants, the plaintiff seeks back-pay (including interest), benefits, lost seniority and loss pension. The plaintiff seeks compensatory and puni-

---

**1.** 42 U.S.C. § 2000e *et seq.*

**2.** The claim of outrage never reached the jury. It was dismissed on a motion for summary judgment.

**3.** *Beesley v. The Hartford Fire Insurance Co.*, 717 F.Supp. 781 (N.D.Ala.1989).

tive damages according to proof against the defendants for invasion of privacy and tort of outrage. The attorney also seeks a reasonable attorney's fee, costs, and expenses of this litigation.

Following four days of trial, the jury returned its verdict through the use of special interrogatories. The jury found that Anderson Electrical had committed acts of sexual harassment against Walker in violation of Title VII and had invaded Walker's privacy. However, the jury also found that Walker had sustained no monetary damage, either in the form of compensatory or punitive damages, as a proximate result of these violations.[4] In response to the interrogatories involving Local Lodge 2601, the jury determined that the Union had committed no acts of sexual harassment against Walker.

Based on the answers to the special interrogatories, the district court entered final judgment ordering that the "[p]laintiff, Ann Walker, shall have and recover nothing of defendants, or either of them." The court also refused to grant Walker attorneys' fees.

Walker filed several post-trial motions affecting only Anderson Electrical, all of which were denied. In addition to a motion for a new trial on the subject of damages, which is not at issue, all of the motions sought an injunction, a declaratory judgment, nominal damages, and attorneys' fees based on the jury finding of sexual harassment and invasion of privacy. 742 F.Supp. 591. The denial of these motions is the subject of this appeal.

## II. DISCUSSION

### A.

At the outset, Walker argues that the district court abused its discretion by denying her declaratory and injunctive relief in light of the jury's finding of a Title VII violation. We disagree.

Walker's post-trial motion for injunctive and declaratory relief was interpreted by the district court as a post-trial motion to amend the pre-trial order. The pre-trial order stated that Walker would seek only a money award. The district court indicated that Walker's failure to pursue declaratory and injunctive relief in the pre-trial order, where Walker had initially demanded such relief in her complaint, may have been part of a strategy to achieve a jury trial on the Title VII issues. "The absence of any prayer for equitable relief," the court noted in its Memorandum Opinion of July 9, 1990,

---

4. The interrogatories involving Anderson Electrical and the jury's responses to them are reprinted below.

    1. Did defendant Anderson Electrical Connectors (Square D), commit any acts of sexual harassment against plaintiff, Ann Walker, in violation of Title VII of the Civil Rights Act of 1964 ...?
        YES X    NO___
    2. ONLY if the jury has answered "YES" to Question No. 1, did the said sexual harassment proximately cause plaintiff to lose any time from work?
        YES___    NO X
    3. ONLY if the jury has answered "YES" to Question No. 1 and "YES" to Question No. 2, state the amount of wages, if any, which plaintiff has proven by a preponderance of the evidence that she lost as a proximate result of defendant Anderson Electrical Connectors' said conduct violating the Civil Rights Act.
        $_____
    7. Did defendant, Anderson Electrical Connectors (Square D), invade the privacy of the plaintiff, Ann Walker?

        YES X    NO___
    8. ONLY if the jury has answered "YES" to Question No. 7, did the said invasion of plaintiff's privacy proximately cause plaintiff any injury?
        YES_____    NO X
    9. ONLY if the jury has answered "YES" to Question No. 7 and "YES" to Question No. 8, state the amount of compensatory damages, if any, which plaintiff has proven by a preponderance of the evidence that she sustained as a proximate result of said defendant's invasion of plaintiff's privacy ...
        $_____
    10. ONLY if the jury has answered "YES" to Question No. 8 and ONLY if the jury finds that plaintiff, Ann Walker, has proven by clear and convincing evidence that defendant Anderson Electrical Connectors consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff, state the amount of punitive damages to be assessed against defendant, Anderson Electrical Connectors, for the purpose of punishing it and deterring similar future acts of invasion of privacy.
        $_____

"subtracted somewhat from defendant's arguments against trial by jury."[5]

The court denied Walker's motion to amend the pre-trial order citing Fed. R.Civ.P. 16(e), which states that the pre-trial order "shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pre-trial conference shall be modified only to prevent manifest injustice."

■ The district court's decision to follow the pre-trial order can be reversed on appeal only where the district court has abused its discretion. *Randolph County v. Alabama Power Co.*, 784 F.2d 1067, 1072 (11th Cir.1986), *cert. denied,* 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 833 (1987); *Hodges v. United States*, 597 F.2d 1014 (5th Cir.1979).[6] "[W]e realize that for pretrial procedures to continue as viable mechanisms of court efficiency, appellate courts must exercise minimal interference with trial court discretion in matters such as the modification of its orders." *Hodges,* 597 F.2d at 1018.

■ While Rule 16(e) requires that the pre-trial order be modified to "prevent manifest injustice," in this case the modification requested by Walker would only serve to work an injustice against the defendant, Anderson Electrical. As the district court pointed out in its Memorandum Opinion of July 9, 1990, "Walker chose her strategy, forcing Anderson Electrical to choose its strategy. It would be disingenuous of any court to find at this late date that this pre-trial order can be modified post-trial in order to 'prevent manifest injustice.'"

We agree with this reasoning and find that the district court did not abuse its discretion in following the pre-trial order. Walker pursued a damages trial and got just that. It would be unfair to Anderson Electrical to give Walker relief which she did not request; relief for which Anderson Electrical was never permitted to establish a defense.

■ Walker's central argument on this matter is that the district court has not complied with Fed.R.Civ.P. 54(c). Rule 54(c) states, in pertinent part, that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Applying Rule 54(c) to the facts of her case, Walker contends that she is "entitled" to equitable relief based on the jury's finding of sexual harassment even though she abandoned this claim for relief in the pre-trial conference and actively pursued a monetary award. Walker further contends that Rule 54(c) and Rule 16(e) conflict under these facts and that Rule 54(c) prevails in the event of such a conflict.

We see no conflict and find that Rule 54(c) does not apply to this case. Rule 54(c) requires that the district court grant Walker only the relief to which she is "entitled," even when that relief is not requested in the pleadings. But Walker *did* request a declaratory judgment and an injunction in her pleadings and then abandoned this form of relief at the pre-trial conference in favor of something else, namely a money award. Rule 54(c) simply does not sanction this type of maneuvering. We hold that Walker is not entitled to the relief abandoned in the pre-trial order and affirm the district court's denial of her motion for injunctive and declaratory relief.

### B.

Walker next argues that a jury finding of sexual harassment in violation of Title VII mandates a court award of one dollar in nominal damages and that the district court erred by not making such an award. We disagree.

---

**5.** According to Walker, the fact that declaratory and injunctive relief were not included in the pre-trial order was simple error. "There is nothing in the Record, and no finding by the district court, that the plaintiff knowingly and voluntarily waived [her] request for injunctive and declaratory relief. The failure to mention such relief in the Pretrial Order was merely an oversight." Brief for Appellant at 11.

**6.** Decisions of the former Fifth Circuit handed down before October 1, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

The district court did not instruct the jury on the possibility of awarding nominal damages in the event of a finding of sexual harassment. Walker did not request a charge on nominal damages, nor did she object to the court's failure to make such a charge.[7]

Fed.R.Civ.P. 51, which states that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection," precludes Walker, at this late date, from objecting to the fact that no jury instruction on nominal damages was given at trial. The federal court's long standing policy against additur, as an intrusion on the jury's domain and violation of the Seventh Amendment, also stands in the way of Walker's request for one dollar in nominal damages where the jury awarded none. *See Hattaway v. McMillian*, 903 F.2d 1440, 1451 (11th Cir.1990); *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935).

Walker argues that *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), requires the automatic award of nominal damages upon the finding of a Title VII violation regardless of Rule 51 and the federal courts' dislike of additur. *Carey* does not, however, address the issue of nominal damages in a Title VII action.

*Carey* involved interpretation of 42 U.S.C. § 1983,[8] which provides a remedy for violations of constitutional rights by persons acting under color of state law. Emphasizing the absolute nature of constitutional rights and "the importance to organized society that those rights be scrupulously observed," *Carey*, 435 U.S. at 266, 98 S.Ct. at 1053, the Court mandated the award of nominal damages upon the finding of a procedural due process violation even where no actual injury had been shown. By contrast, this case involves, not a violation of constitutional rights, but merely, a violation of purely statutory rights under Title VII. Nothing in *Carey* mandates the award of nominal damages for statutory violations.[9]

Because we find that the reasoning in *Carey* applies only to violations of constitutional magnitude, we decline Walker's invitation to extend the rationale of *Carey* to Title VII cases and affirm the district court's denial of Walker's post-trial motion for nominal damages.

## C.

Finally, we come to the crux of Walker's appeal—attorneys' fees. While an award of nominal damages, an injunction or a declaratory judgment would make the prospect of obtaining attorneys' fees much easier, Walker argues that even without these badges of victory she is a "prevailing par-

---

7. According to Anderson Electrical, the reason that Walker did not take a nominal damages instruction to the jury was because, "[i]f there had been an instruction or jury interrogatory on nominal damages, the jury might have given it, and that was a risk to be avoided by the plaintiff since she was after substantial money." (Brief for Appellee at 39–40).

8. Title 42 U.S.C. § 1983 provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

9. Only, *Hicks v. Brown Group, Inc.*, 902 F.2d 630 (8th Cir.1990) *vacated,* — U.S. —, 111 S.Ct. 1299, 113 L.Ed.2d 234 (1991), has extended *Carey* beyond the realm of 42 U.S.C. § 1983 by holding that nominal damages are mandatory upon the finding of racial discrimination in the making and enforcement of contracts in violation of 42 U.S.C. § 1981. However, the validity of *Hicks* is questionable. *Hicks* was vacated and remanded in light of the Eighth Circuit's en banc opinion in *Taggart v. Jefferson County Child Support Enforcement*, 935 F.2d 947 (8th Cir.1991). *Taggart* overruled *Hicks* on the issue of whether a claim for racially discriminatory termination under 42 U.S.C. § 1981 remains actionable after the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), thereby making the *Hicks* court's pronouncements on the issue of nominal damages moot.

ty" under 42 U.S.C. § 2000e–5(k) [10] and entitled to attorneys' fees.

42 U.S.C. § 2000e–5(k) provides, in relevant party, "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow *the prevailing party*, other than the Commission or the United States, a reasonable attorney's fee as part of the costs." (Emphasis added). In *Texas Teachers Association v. Garland Independent School District*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Supreme Court, in a unanimous opinion, found improper the Fifth and Eleventh Circuits' use of the "central issue" test to determine prevailing party status.[11] In its place, the Court established the standard for identifying prevailing parties:

> If the plaintiff has succeeded on "any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit," the plaintiff has crossed the threshold to a fee award of some kind ... The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.

*Id.* at 791–93, 109 S.Ct. at 1493–94 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)).

Walker claims that the jury verdict materially alters the legal relationship between the parties in the same fashion as an injunction or declaratory judgment. But Walker fails to successfully distinguish *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) and *Rhodes v. Stewart*, 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988), two Supreme Court cases with similar fact patterns which reject similar arguments. We find these cases controlling.

In *Hewitt*, a plaintiff was denied attorneys' fees, despite a finding by the Third Circuit that his due process rights had been violated. *Hewitt*, 482 U.S. at 757–59, 107 S.Ct. at 2674–75. The plaintiff, a prisoner in the Pennsylvania state prison system, sued prison officials for placing him in disciplinary confinement without due process of law. The district court dismissed the case in a summary judgment motion. On appeal, the Third Circuit reversed, finding that there had, indeed, been a violation of due process. The case was remanded to the district court with instructions to award the plaintiff damages unless the defendants were able to assert an immunity defense. Finding such a defense, the district court again dismissed the case in a motion for summary judgment and in a later ruling denied the plaintiff attorneys' fees. With regard to the denial of attorney's fees, the Third Circuit reversed. Equating its initial finding of a due process violation with a declaratory judgment, the Third Circuit held that the plaintiff was a "prevailing party" under 42 U.S.C. § 1988 and entitled to an award of attorney's fees. The Supreme Court rejected the Third Circuit's rationale and reversed, holding:

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces-the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement—what makes it a proper judicial resolution of a "case or controver-

---

10. Though the parties have cited 42 U.S.C. § 1988 as the controlling fee shifting provision in this case, 42 U.S.C. § 2000e–5(k) is the appropriate fee shifting provision in Title VII actions. This distinction is a technical one, however, as Congress intended the standards for awarding fees under these two statutes to be the same. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 3–4, *reprinted in* 1976 *U.S.Code Cong. & Admin.News* 5908, 5912. *See also Cofield v. City of Atlanta*, 648 F.2d 986, 987 n. 3 (5th Cir. Unit B 1981)

("The language of section 1988 tracks that of section 2000e–5(k).").

11. Under the central issue test, the plaintiff must achieve the primary relief sought in order to be deemed a "prevailing party." It is not enough to win on an important side issue. *See Martin v. Heckler*, 773 F.2d 1145, 1149 (11th Cir.1985) (*en banc*).

sy" rather than an advisory opinion-is the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*

*Hewitt,* 482 U.S. at 761, 107 S.Ct. at 2676.

Walker argues that *Hewitt* is not controlling because, unlike the plaintiff in *Hewitt,* she has achieved much more than a hollow pronouncement on a matter of law. Walker points out that she won a favorable jury determination on the ultimate factual issue in the case and that this determination was an important part of "settling the score" with her employer. The jury finding of sexual harassment, she contends, has forever changed the legal relationship between the parties by foreclosing the defendant's denial of such sexual harassment.

■ While we find this argument appealing, it simply does not conform to the basic premise of *Hewitt.* With regards to the plaintiff in *Hewitt,* the Court noted that, "[t]he only 'relief' he received was the moral satisfaction of knowing that a federal court concluded that his rights had been violated." *Hewitt,* 482 U.S. at 762, 107 S.Ct. at 2676. Walker received nothing more. The jury's finding of sexual harassment no more altered the legal relationship between the parties than the Third Circuit's finding of a due process violation in *Hewitt.* And, just as the Third Circuit's finding was an important first step on the road to obtaining rleief and "affect[ing] the behavior of the defendant towards the plaintiff," *id.* at 761, 107 S.Ct. at 2676, so too is the jury's finding of sexual harassment an important first step for Walker. But, as *Hewitt* suggests, such a finding, without more, will not ordain a litigant the prevailing party.

The Supreme Court's decision in *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988), reinforces our holding today. In *Rhodes,* two plaintiffs obtained a declaratory judgment for violations of their First Amendment rights as prisoners in a state corrections facility. Prior to the court's announcement of declaratory relief, however, one of the plaintiffs was released from prison and the other died. The Supreme Court held that the declaratory judgment could not, under those circumstances, affect the legal relationship between the parties. The plaintiffs' victory was moot despite the fact that they were awarded a declaratory judgment. As the Court noted, "[a] declaratory judgment ... is no different from any other judgment. It will constitute relief ... if, and only if, it affects the behavior of the defendant toward the plaintiff." *Rhodes,* 488 U.S. at 4, 109 S.Ct. at 203.

While the jury's finding of sexual harassment in this case is not moot as it concerns Walker, Walker did not attain even a declaratory judgment as did the plaintiffs in *Rhodes.* Instead, Walker's only claim to the spoils of victory is a jury finding of sexual harassment. "That is not the stuff of which legal victories are made." *Hewitt,* 482 U.S. at 760, 107 S.Ct. at 2675. Therefore, in accordance with *Hewitt* and *Rhodes,* we hold that to be a prevailing party for purposes of 42 U.S.C. § 2000e-5(k), requires the attainment of something more tangible than a jury finding of sexual harassment. The district court did not err in denying Walker's request for attorney's fees.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Walker's post-trial motions for declaratory and injunctive relief, nominal damages, and attorneys' fees.