United States Court of Appeals,

Eleventh Circuit.

No. 96-9248.

Johnny R. CANUP, Plaintiff-Appellant,

v.

CHIPMAN-UNION, INC., Defendant-Appellee.

Oct. 8, 1997.

Appeal from the United States District Court for the Middle District of Georgia. (No. 3:94-CV-100(DF), Duross Fitzpatrick, Chief Judge.

Before CARNES, Circuit Judge, and HENDERSON and GIBSON[*], Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge:

A jury determined that Chipman-Union Incorporated ("CUI") unlawfully considered Johnny Canup's race in its decision to terminate Canup's employment, but that CUI would have terminated him even if his race had not been considered. After entering judgment in Canup's favor, the District Court[1] decided not to award Canup any of his attorney fees and awarded him only $6,768.43 of the $12,553.20 in costs he requested. Canup appeals that portion of the District Court's order that denied his claim for attorney fees, and we affirm.

*I. BACKGROUND*

Although the jury's verdict is not an issue on appeal, a general understanding of the facts is important to the issue that has been raised. Canup, a white male, was employed by CUI and held the position of Finishing Supervisor. As a supervisor, Canup's conduct was governed by, among other materials, a Supervisor's Manual. Section G of the Supervisor's Manual is captioned "Good Moral Behavior" and states in part as follows:

> Chipman-Union also expects its supervisors to be faithful in the marriage relationships [sic]. A bad example is set by a supervisor who engages in an adulterous relationship. To do so

[*]Honorable Floyd R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]The Honorable Duross Fitzpatrick, Chief Judge for the United States District Court for the Middle District of Georgia.

leads to a loss of respect from the employees of the supervisor's department. Personal conduct that affects the performances of the department is the Company's concern.

Canup was aware of this prohibition. Nonetheless, he began having an extramarital affair with a subordinate, Theresa Hubbard; both Canup and Theresa were married at the time, and Theresa's husband, Kevin, was Canup's friend.

Kevin discovered the affair in May 1993 and attempted suicide; the attempt failed. Kevin threatened to kill Canup, and Kevin's father also threatened Canup's life. After learning of these death threats, Canup notified his managers about both his affair and the threats. John Osborne (Vice President of Manufacturing) and the company president discussed the matter and decided to terminate Canup's employment. At the time of these discussions, CUI was in the midst of a union campaign. A black supervisor had been terminated recently,[2] and there was some concern that failure to terminate Canup's employment might create a racial issue in the union negotiations. Consequently, although firing Canup was not a desirous outcome, Osborne and the president felt that the best thing to do was to act consistently with past practice and terminate Canup's employment.

Canup brought suit, alleging seven causes of action: race discrimination, retaliation, tortious interference with contracts, bad faith and "stubborn litigiousness," defamation, and invasion of privacy. The case ultimately went to trial on only Count I of the complaint, with Canup requesting damages for lost wages in the amount of $590,000 and additional unspecified amounts for compensatory and punitive damages. Following trial, the jury found that Canup's race was a factor in CUI's decision to terminate his employment, but that CUI would have terminated Canup for his violation of company policy even if Canup's race had not been considered. This resulted in a verdict in Canup's favor, but by operation of law entitled him to recover no damages.

Canup then filed a motion for attorney fees and costs, requesting fees in the amount of $110,779.50 and costs in the amount of $12,553.20. The District Court concluded that the

_____

[2]This individual was terminated for financial misconduct, not for committing adultery.

appropriate amount of fees in this case would be no fees at all.  The District Court did award costs in the amount of $6,768.43;  this aspect of the award is not appealed by either party.

## II. DISCUSSION

In *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the Supreme Court held that in Title VII cases, once the plaintiff establishes an impermissible factor played a motivating part in an employment decision, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [impermissible factor] into account."  490 U.S. at 258, 109 S.Ct. at 1795.  In response, Congress passed the 1991 Civil Rights Act which, *inter alia,* altered the effect of a finding of liability under this subset of mixed motive cases.  Now, "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m) (1994).  However, if a defendant in such a case can also prove that it

> would have taken the same action in the absence of the impermissible motivating factor, the court—
>
>> (i) *may grant* declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title;  and
>>
>> (ii) *shall not award* damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described [elsewhere in this statute].

42 U.S.C. § 2000e-5(g)(2)(B) (emphasis supplied).  The combined effect of these amendments creates two possible outcomes in mixed motive cases:  (1) the plaintiff prevails if he or she proves that an improper motive was a factor in the employment decision, but (2) the defendant can limit its liability if it can prove that it would have made the same decision even if the improper factor had not been considered.  *Cf. Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1084-85 (11th Cir.1996).  In those mixed motive cases in which the defendant fails to prove that the same employment decision would have been made, 42 U.S.C.2000e-5(k) applies and provides that a

3

"prevailing party" can recover "a reasonable attorney's fee (including expert fees) as part of the costs."

Canup acknowledges that we review the District Court's decision to deny attorney fees for abuse of discretion. *See Turner v. Sungard Bus. Sys., Inc.,* 91 F.3d 1418, 1422 (11th Cir.1996). However, Canup contends that the District Court considered improper factors in deciding to deny his fee request; this is a legal issue that we review de novo. *See Church v. City of Huntsville,* 30 F.3d 1332, 1342 (11th Cir.1994).

Canup first argues that § 2000e-5(g)(2)(B) establishes a presumption in favor of fees because he proved that CUI considered his race when deciding to terminate him, even though he would have been terminated in any event. We disagree. First, the statute suggests the contrary: § 2000e-5(g)(2)(B) uses permissive language ("may grant") when discussing attorney fees, but uses mandatory language ("shall not award") when discussing other forms of relief. The proximity of these two phrases in the same statute is telling: had Congress wanted to require attorney fee awards, it could have done so when it drafted other, mandatory language regarding remedies. *See Sheppard v. Riverview Nursing Ctr., Inc.,* 88 F.3d 1332, 1338 (4th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 483, 136 L.Ed.2d 377 (1996).

Canup also finds supports in § 2000e-5(k), which provides for attorney fees to the "prevailing party" in other Title VII cases. Canup contends that he would have been considered a "prevailing party" under § 2000e-5(k), and he therefore should be entitled to fees. However, Canup would not fare well under § 2000e-5(k). Recovery of fees under that provision initially depends upon achieving a favorable result—be it monetary or equitable relief—that alters the relationship between the parties. *E.g., Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) ("[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.... Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement."); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Canup received nothing more than a judgment; no monetary or

4

equitable relief was obtained.  This case is thus very similar to *Walker v. Anderson Elec. Connectors,* 944 F.2d 841 (11th Cir.1991), *cert. denied,* 506 U.S. 1078, 113 S.Ct. 1043, 122 L.Ed.2d 352 (1993).  There, the plaintiff proved that she had been subjected to sexual harassment, but the jury did not award any damages.  (There was no instruction regarding nominal damages, so not even a dollar was awarded to the plaintiff.).  We rejected the plaintiff's argument that the favorable jury verdict, standing alone, entitled her to an award of fees.  *Walker,* 944 F.2d at 847.  Canup has not achieved as much, and perhaps has achieved less, than the plaintiff in *Walker,* and would not be entitled to fees under § 2000e-5(k).  *Cf. Farrar,* 506 U.S. at 114-16, 113 S.Ct. at 574-576 (affirming denial of attorney fees for plaintiff who proved violation of his constitutional rights but recovered only nominal damages).  Thus, to the extent that § 2000e-5(k) (and other fee shifting statutes) provide guidance, Canup's failure to obtain any real relief deprives him of any right to recover attorney fees.[3]

Canup acknowledges that he recovered no damages, but contends recovery of damages should not be an important consideration because Congress has decreed that damages are not available.  He suggests a different analysis for considering fee requests under 42 U.S.C. § 2000e-5(g)(2)(B);  an analysis that does not consider success on the merits but instead starts with the presumption that Congress intended for fees to be awarded and considers (1) whether there was direct evidence of discrimination, (2) whether injunctive relief was appropriate and, if so, whether it was granted, (3) evidence that non-monetary goals were accomplished, and (4) the existence of declaratory relief.  This framework is inappropriate.

The presumption that Canup seeks would create a very unusual situation.  Under his formulation, Canup's eligibility for fees would be greater than the plaintiffs in *Walker* and

---

[3]In some cases, the presence of a minor, inconsequential victory is the basis for denying a plaintiff "prevailing party" status;  in others, the plaintiff is deemed a prevailing party but the low level of success is relied upon to hold that the appropriate amount of fees is nothing.  The point at which this issue is considered is irrelevant.  "[E]ven if the exclusion's location is debatable, its effect is not:  When the plaintiff's success is purely technical or *de minimis,* no fees can be awarded."  *Farrar,* 506 U.S. at 117, 113 S.Ct. at 576 (O'Connor, J., concurring).

5

*Farrar*—cases in which the plaintiffs' civil rights were violated and the defendants could not justify their actions on legitimate grounds. There is no reason to believe that Congress wanted to make it easier for Canup—who would have been fired anyway—to recover fees than for Farrar—whose due process rights were violated—or for Walker—who endured sexual harassment. We would expect Congress to speak more clearly if it intended such a radical change in the application and understanding of its fee shifting statutes. Canup seeks to minimize his failure to obtain any relief by arguing it was not available. We do not believe Congress meant to encourage plaintiffs to seek judgments but not relief.

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement—what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*

*Hewitt v. Helms,* 482 U.S. 755, 761, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987).[4]

Finally, we are troubled by Canup's suggestion that the District Court should have considered some of the facts of this case—namely, the existence of direct evidence—and ignore other facts—here, Canup's own misconduct. Canup contends he was penalized for his misconduct when the jury concluded he would have been fired anyway. Now, he contends, it is appropriate to punish CUI for its actions by making it pay his attorney fees. The jury's decision does not reflect approval or disapproval of Canup's actions; it could have been completely unbothered by Canup's violation of rules yet still convinced that CUI would have fired him for this nondiscriminatory reason. The

---

[4]We also disagree with Canup's contention that the jury verdict constituted declaratory relief. As the quoted passage from *Hewitt* explains, declaratory relief will change the relationship between plaintiff and defendant; the jury's verdict in this case did not. *Cf. Rhodes v. Stewart,* 488 U.S. 1, 4, 109 S.Ct. 202, 204-05, 102 L.Ed.2d 1 (1988). As in *Hewitt,* "[t]he only "relief" [Canup] received was the moral satisfaction of knowing that a federal court concluded that his rights had been violated." 482 U.S. at 762, 107 S.Ct. at 2676. This does not constitute declaratory relief. *See id.* at 762-63, 107 S.Ct. at 2676-77. It is for this same reason that Canup's private, non-monetary goals (which are not defined in the record) cannot serve as "relief" sufficient to entitle him to an award of fees.

6

jury is not asked to compare fault or assess blame. Furthermore, it seems that CUI has been penalized by virtue of the verdict against it and the obligation to pay Canup's costs. We agree with the Fourth Circuit's discussion about this matter:

> Some mixed-motive cases will evidence a widespread or intolerable animus on the part of a defendant; others will illustrate primarily the plaintiff's unacceptable conduct which, by definition, will have justified the action taken by the defendant. The statute allows district courts to distinguish among cases that are in reality quite different.

*Sheppard,* 88 F.3d at 1336.

We hold that the starting point for considering fee requests under § 2000e-5(g)(2)(B) must be the degree of success obtained by the plaintiff. It is true that Congress has determined that monetary damages are not available; however, Congress has decreed that equitable relief is available except in certain circumstances. Injunctive or declaratory relief may not be available in a given case (such as Canup's), but it will be available in some situations.[5] The fact that relief is not always available does not justify ignoring this factor in order to make fee awards more prevalent; had Congress wanted to prohibit courts from considering what has historically been a common factor in fee requests in order to make fee awards in same-decision cases more common, it could have drafted a statute that clearly stated this intent. *See Sheppard,* 88 F.3d at 1336.

We also think it important to consider the facts of the given case. As suggested above, an "innocent" employee whose conduct played no role in his termination (e.g., reduction in force cases) stands in a different situation than one who engages in misconduct. Furthermore, misconduct manifests itself with varying degrees, so the severity of the defendant's wrongdoing can be considered in determining whether the defendant should be obligated to pay the plaintiff's attorney

---

[5]Consider a case in which a company-wide policy that violates Title VII contributed to a plaintiff's termination—yet, the jury still believed the termination would have occurred notwithstanding the discriminatory policy. No damages would be awarded, but injunctive relief might be appropriate. In that case, the public purpose for the suit is greater, and affirmative relief would have been obtained—even though the plaintiff could not be benefitted because the District Court would lack the power to order reinstatement.

fees. The District Court is in the best position to evaluate the effect the facts of a given case should have on the fee request.[6]

After reviewing the District Court's order, we conclude that its analysis was proper and did not constitute an abuse of discretion. The court considered the degree of Plaintiff's success and noted that "the results obtained by Plaintiff's attorney did not substantially benefit her client. This case provided only a pyrrhic victory for Plaintiff." The court also noted "[t]hat this was not a case of egregious discrimination, and it did not require the award of declaratory or injunctive relief. Thus the Court sees no reason for an award of attorney's fees." Finally, the District Court took note of the equities of the case when it observed "[a]n award would be appropriate when declaratory or injunctive relief is awarded or where intentional discrimination is so blatant and egregious that failure to award attorneys' fees to Plaintiff would constitute an injustice. This, however, is not such a case."

The District Court also mentioned the fact that Canup received and rejected an offer to settle for $20,000. Canup contends that it was improper for the District Court to consider the settlement offer because the offer failed to include attorney fees as part of the costs as required by Federal Rule of Civil Procedure 68.[7] Any discussion about Rule 68 would be purely academic, as CUI did not intend its offer to be a Rule 68 offer of settlement. With that caveat, we are not persuaded by Canup's argument. "[W]here the underlying statute defines "costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68." *Marek v. Chesny,* 473 U.S.

---

[6]We do not intend for this to become a factor in fee requests governed by § 2000e-(5)(k) (or, for that matter, in any other fee shifting statute). A request governed by § 2000e-5(g)(2)(B) is necessarily preceded by a jury's determination that the employment decision would have been made absent the consideration of illegal factors. However, a fee request governed by § 2000e-(5)(k) is not preceded by this determination; in fact, the jury may have specifically rejected this argument. Therefore, consideration of nondiscriminatory reasons for the employment decision leads to reconsideration of the jury's verdict which, of course, is improper.

[7]Rule 68 provides that under certain circumstances a rejected offer of judgment will permit a defendant to recover cost from a prevailing plaintiff if the plaintiff did not recover more than the amount contained in the offer.

1, 9, 105 S.Ct. 3012, 3016, 87 L.Ed.2d 1 (1985). Although § 2000e-2(g)(B) allows for attorney fees, it does not allow for them *as a part of costs.*

> In expressly distinguishing attorney's fees from "costs," Congress was aware that it was deviating from the language in § 1988, and that under *Marek,* the Rule 68 implications depend upon the precise wording of the fee-enabling statute. This explicit congressional recognition, coupled with *Marek* 's emphasis on the exact language of the particular attorney's fee provision, makes clear that fees granted under § 2000e-5(g)(2)(B) are not part of "costs" subject to Rule 68.

*Sheppard,* 88 F.3d at 1337 (citation omitted). We thus reject Canup's contention that *Marek* bars consideration of CUI's offer. Nonetheless, we are concerned that any settlement offer—regardless of how slight it may be—will appear overwhelming in a case in which Congress has decreed that no damages may be awarded. Therefore, although rejection of a settlement offer may be considered, we do not believe that it should ordinarily be a controlling factor in assessing a fee request. We have reviewed the District Court's order and conclude that it did not place inordinate weight on Canup's rejection of the settlement offer; the District Court was primarily concerned about the relative lack of success achieved and the technical nature of his victory.

## III. CONCLUSION

In light of the lack of success achieved and the facts of this case, we conclude that the District Court did not abuse its discretion when it declined to award any fees to the plaintiff in this case. Accordingly, the District Court is AFFIRMED.