[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 2, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-15103

_____

D. C. Docket No. 02-02450-CV-CC-1

KAMI Z. BARKER,
ACCESS NOW, INC.,

Plaintiffs-Appellants,

versus

NILES BOLTON ASSOCIATES, INC.,
TCR GA CONSTRUCTION LIMITED PARTNERSHIP,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 2, 2009)**

Before BIRCH and PRYOR, Circuit Judges, and STROM[*], District Judge.

_____

[*]Honorable Lyle E. Strom, United States District Judge for the District of Nebraska,
sitting by designation.

BIRCH, Circuit Judge:

This is a disability discrimination case under the Fair Housing Act ("FHA") brought by Appellants Kami Z. Barker ("Barker") and Access Now, Inc. ("Access Now") against Niles Bolton Associates, Inc. ("Bolton") and TCR GA Construction, L.P. ("TCR"). Following a nearly three-week trial, a jury found that Bolton, the designer of the Clairmont Campus at Emory University, had not violated the FHA but that TCR, the builder, had committed FHA violations. Although the jury found that Barker did not suffer any damages, it awarded Access Now compensatory damages of $1675. On appeal, Barker and Access Now challenge the district court's denial of their motion for a new trial and the denial of their motion for judgment as a matter of law against Bolton. They also argue that Barker was entitled to nominal damages for the FHA violations and that the district court failed to provide sufficient reasons justifying its award of attorney's fees to Access Now. After a thorough review of the record, briefs, and oral argument, we AFFIRM.

## I. BACKGROUND

Barker has a type of muscular dystrophy requiring a wheelchair for mobility. Nevertheless, she is able to live independently and work as an attorney. She graduated from Emory University ("Emory") in 2002 with a bachelors degree in

business administration and received her law degree from Emory in 2005.

For law school, Barker applied to live in a newly built complex called the Clairmont Campus. When she first visited the apartment in July 2002, she did not find it to be sufficiently handicapped-accessible and tried to resolve the matter with Emory personnel. Unable to do so, she contacted Access Now, a non-profit organization that advocates for handicap accessibility. Access Now paid Tcherneshoff Consulting, Inc. $1675 to report on any alleged FHA and ADA violations in Barker's apartment. In September 2002, Barker and Access Now sued Emory, Bolton and TCR for violations of the Fair Housing Act, 42 U.S.C. § 3604(f); the Georgia Fair Housing Act, O.C.G.A. § 8-3-200 et. seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et. seq.; Section 504 of the Rehabilitation Act; and O.C.G.A. § 51-1-6. Barker alleged in her complaint that she suffered emotional distress as well as actual damages.

In November 2002, Barker moved into another apartment at the Clairmont Campus that had been modified by Emory to accommodate her handicap. Barker believed this apartment was compliant with the FHA in most respects. Barker and Access Now eventually settled with Emory during the summer of 2003, wherein Barker agreed to live in her modified apartment and Emory agreed to make the majority of the buildings on the entire campus handicapped-accessible.

Prior to trial, Barker and Access Now filed a motion in limine to exclude evidence of the Emory settlement agreement on grounds that it was irrelevant, unduly prejudicial, and violated Federal Rule of Evidence 408. In that motion, Barker and Access Now acknowledged that "[t]he only issue in which the settlement with Emory could possibly be admissible is to establish that [Barker's] room was modified pursuant to the settlement agreement and thus some of her damages may be mitigated in part." R12-246 at 16. Barker and Access Now stated they were willing to stipulate to the modifications made, however.

The district court granted in part Barker and Access Now's motion in limine to exclude evidence of the settlement negotiations and agreement with Emory. Although the amount of the settlement was precluded from evidence, a redacted version of the settlement agreement was "admissible for the limited purposes of showing modifications made to Ms. Barker's apartment and mitigation of damages." R13-276 at 1-2. Because the parties could not agree on which portions should be redacted, the court selected portions from the versions submitted by each and admitted the settlement agreement thus redacted as Court Exhibit No. 1.

At trial, Barker conceded that she never saw a psychologist, was never physically hurt, and did not lose any income as a result of any alleged FHA violations. When asked what damages she suffered, Barker responded, "This case

4

is a civil rights case. It's about the fact that I wasn't given the rights that the law gives to me and that I have the right to, that I was treated differently than everyone else that lived on that campus . . . ." R15-344, Exh. Vol. 37 at 120-21. In addition, Barker testified that it was embarrassing and humiliating to deal with the accessibility-related difficulties she encountered on campus, and that her grades had suffered during her first semester.

On appeal, Barker and Access Now contend that the district court erred in denying their motion for new trial based on the erroneous admission of the redacted settlement agreement and subsequent remedial measures. They further maintain that a new trial is warranted because the district court erroneously barred evidence of accessibility codes other than the FHA and erroneously instructed the jury on emotional distress damages. Additionally, Barker and Access Now submit that the district court erred in denying judgment as a matter of law against Bolton because the undisputed evidence showed that Bolton's flawed design violated the FHA and the district court should have given judicial deference to the FHA guidelines. Finally, they challenge the district court's failure to award Barker nominal damages and its award of attorney's fees to Access Now.

## II. DISCUSSION

A. <u>Motion for New Trial</u>

1.  Admission of Redacted Settlement Agreement

Barker and Access Now first contend that they are entitled to a new trial based on the putatively erroneous admission of the redacted settlement agreement. They argue the settlement agreement should have been excluded under Rule 408 because it was offered to prove the absence of liability and the amount of the claim. They further submit that the agreement was unduly prejudicial under Federal Rule of Evidence 403. Neither argument is persuasive.

We review a district court's denial of a motion for a new trial for abuse of discretion. See Action Marine, Inc. v. Continental Carbon Inc., 481 F.3d 1302, 1309 (11th Cir. 2007). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (quotation marks and citation omitted). A district court's decision to admit evidence of a settlement agreement is likewise reviewed for abuse of discretion. See Westchester Specialty Ins. Servs. Inc. v. U.S. Fire Ins. Co., 119 F.3d 1505, 1512 (11th Cir. 1997). Moreover, we afford a district court wide discretion in determining what evidence is relevant at trial. See Cabello v. Fernandez-Larios, 402 F.3d 1148, 1161 (11th Cir. 2005) (per

6

curiam).

Rule 408 bars settlements or offers to settle in order "to prove liability for, invalidity of, or amount of a claim." Fed. R. Evid. 408(a). The rule does not apply if the evidence is offered for another purpose. See id. at 408(b). Here, the redacted settlement agreement was not offered to prove liability for or invalidity of the claims against Bolton and TCR, but rather to show the measure of damages Barker sustained. Barker argued at trial that the campus was not usable to her for her entire three years of law school, entitling her to emotional distress damages for a thousand days at $250 per day. However, Barker admitted that she moved to a modified apartment a few months after she started law school which complied "for the most part" with the FHA. R15-344, Exh. Vol. 37 at 143. The settlement agreement detailed the modifications made to her apartment and the Clairmont Campus to make it usable for her while she was at Emory. The agreement expressly disavowed any acknowledgment of liability by Emory University and preserved Barker and Access Now's claims against Bolton and TCR.

Furthermore, the settlement agreement was not offered to show the amount of the claim. The amount of monetary consideration was redacted from the admitted agreement and there were no dollar amounts given for the cost of the modifications. As such, the redacted settlement agreement did not provide

evidence as to how much Barker and Access Now's claim was worth. Compare

Belton v. Fireboard Corp., 724 F.2d 500, 505 (5th Cir. 1984) (per curiam) (Rule

408 violated where trial court disclosed actual settlement amounts and instructed

jury to consider those amounts in determining plaintiff's monetary award).

Accordingly, the district court did not abuse its discretion in admitting the redacted

settlement agreement under Rule 408.

Admission of the redacted settlement agreement was also not unduly

prejudicial. Relevant evidence may be excluded under Rule 403 if the danger of

unfair prejudice substantially outweighs its probative value. See United States v.

Tinoco, 304 F.3d 1088, 1120 (11th Cir. 2002). We review a district court's Rule

403 determinations for abuse of discretion and consider the evidence "in a light

most favorable to its admission, maximizing its probative value and minimizing its

undue prejudicial impact." Id. (quotation marks and citation omitted). The

redacted version of the settlement agreement succinctly organized the numerous

modifications Emory agreed to make to the Clairmont Campus and Barker's

apartment. Although Barker and Access Now contend the settlement agreement

could imply a lack of liability, the jury could just as easily have made the opposite

inference – namely, that Emory made the modifications because it was legally

required to do so. See United States v. Arias, 431 F.3d 1327, 1337 (11th Cir.

8

2005) ("It does not tax the imagination to envision the juror who retires to deliberate with the notion that, if the defendants had done nothing wrong, they would not have paid the money back.") (quotation marks, alterations, and citation omitted). Barker and Access Now have thus failed to show that they were unfairly prejudiced by admission of this evidence.

2. Admission of Subsequent Remedial Measures

Barker and Access Now also maintain that the district court abused its discretion in permitting TCR and Bolton to introduce evidence of subsequent remedial measures taken after Barker occupied her apartment in violation of Federal Rules of Evidence 407. We find no abuse of discretion.

Rule 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.

Fed. R. Evid. 407. The rule does not exclude evidence of subsequent remedial measures when offered for another purpose. Id. We review a district court's decision to admit evidence of subsequent remedial measures for abuse of discretion. See Millennium Partners, L.P. v. Colmar Storage, LLC, 494 F.3d 1293, 1303 (11th Cir. 2007).

9

Barker and Access Now filed a pre-trial motion in limine to exclude subsequent remedial measures by TCR and Bolton. The district court denied the motion and stated it would allow Bolton to introduce "evidence of its design that was issued for construction or provided to Emory before the completion of the project but which may not have been implemented." R14-281 (emphasis added). In their motion for new trial, Barker and Access Now argued that the district court erroneously admitted evidence of subsequent remedial measures taken after Barker's occupancy of the apartment, in violation of the district court's order. The district court was unable to address the merits of this argument, however, because Barker and Access Now failed to cite the official transcript pages showing the admission of any such evidence and objection thereto.

On appeal, Barker and Access Now appear to identify two instances where evidence of subsequent remedial measures were introduced after Barker moved into her apartment. The first transcript cite references TCR's closing argument concerning an alleged threshold violation. Besides the obvious fact that closing arguments are not evidence, TCR's counsel pointed out that Bolton's architect, Rafael Garcia, advised TCR about the threshold issue before Barker moved into her unit. This reference thus did not violate the district court's order. The second instance, given without transcript citations, involves subsequent remedial measures

10

taken in Barker's unit.  However, our review of the trial transcript reflects that it was Barker who first testified about the various modifications that Emory made to her unit to accommodate her handicap.  Barker and Access Now cannot now complain about evidence which they introduced.  Accordingly, no abuse of discretion has been shown.

3.  Evidence of Other Accessibility Codes

Barker and Access Now further contend that the district court abused its discretion in barring evidence of stricter accessibility codes.  The district court ruled before trial that Barker and Access Now could not refer to the ADA or Guidelines, Section 504 of the Rehabilitation Act, the Uniform Federal Accessibility Standards, the Georgia Accessibility Code, the Georgia Fair Housing Act, or O.C.G.A. § 51-1-6.  Barker and Access Now assert that this ruling impermissibly limited their cross-examination of Rafael Garcia as to whether he had considered other standards besides the FHA when he designed the Clairmont Campus housing.  We find these arguments lack merit.

"Trial judges retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, confusion of the issues or interrogation that is repetitive or only marginally relevant."  United States v. Baptista-Rodriguez, 17 F.3d 1354, 1370-71 (11th Cir. 1994).  We review a district

11

court's restriction on cross-examination for abuse of discretion.  See id. at 1371.

The district court did not abuse its discretion in this matter.  The record reflects that the district court overruled Bolton's objection and permitted Barker and Access Now's counsel to impeach Garcia on cross-examination by asking him whether he had considered accessibility codes that were stricter than the FHA. Upon further cross-examination, Garcia admitted that he had considered two other standards other than the FHA when he designed the Clairmont Campus housing and that those standards generally required greater accessibility than the FHA guidelines.  Although Garcia was precluded from mentioning the names of the other accessibility codes, this minor restriction was reasonable because only the FHA was at issue in the trial.  Accordingly, we find no abuse of discretion.

4.  Jury Instructions on Emotional Distress

Barker and Access Now also submit that a new trial is warranted because the jury instructions on emotional distress were duplicative, lengthy, confusing, and violated public policy.  They contend the instructions erroneously required the jurors to award emotional damages based on an exact measurement in the form of lost wages or medical bills.  Additionally, Barker and Access Now contend the instructions should have stated that emotional damages could be awarded for embarrassment and humiliation.

12

We review jury instructions de novo for legal inaccuracies or misleading statements. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1283 (11th Cir. 2008). Under our deferential standard, we will not "nitpick the instructions for minor defects." Id. Rather, we must view the challenged instructions in context of the entire charge, the allegations of the complaint, the evidence presented, and closing arguments. See id. Reversal requires "a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." Id. (quotation marks and citation omitted).

The challenged instructions here accurately reflected the law and did not mislead the jury. As an initial matter, the court did not instruct the jury that emotional distress damages required a specific measurement. To the contrary, the jury was advised that "there is no exact standard to be applied to determine an amount of compensatory damages." R15-356, Exh. Vol. 49 at 1752. The district court then offered nine factors which the jury could consider in assessing whether Barker suffered emotional distress damages.[1] We have previously acknowledged that these factors "aid triers of fact in determining the propriety of awarding

---

[1]The listed factors stated in the trial court's jury charge were: (1) whether Barker lost the esteem of her peers; (2) whether she suffered physical injury as a consequence of her emotional distress; (3) whether she received psychological counseling or other medical treatment; (4) whether she suffered a loss of income; (5) the degree of emotional distress; (6) the context of the events surrounding the emotional distress; (7) the evidence tending to corroborate her testimony; (8) the nexus between the challenged conduct and the emotional distress; and (9) any mitigating circumstances.

13

compensatory damages for emotional distress." Akouri v. State of Fla Dep't of Transp., 408 F.3d 1338, 1345 n.5 (11th Cir. 2005); see also Marable v. Walker, 704 F.2d 1219, 1220 (11th Cir. 1983) (noting that evidence of pecuniary loss, psychiatric disturbance, effect on social activity, or physical symptoms may pertain to the amount of emotional distress damages for a FHA violation). Although the instructions did not specifically mention humiliation or embarrassment, Barker testified that she experienced these feelings and her attorney raised these factors in his closing arguments. Accordingly, we find no reversible error in the jury charge.

Based on the foregoing, we conclude that the district court correctly denied Barker and Access Now's motion for a new trial.

B. Judgment as a Matter of Law Against Bolton

Barker and Access Now assert that the district court erred in denying judgment as a matter of law against Bolton based on Bolton's flawed design of public pathways, thresholds, thermostat height, and clear floor space in bathrooms and kitchens. Barker and Access Now argue that Bolton should have been held liable for at least some of the FHA violations that TCR was held liable for because the two worked closely together. Barker and Access Now further contend that the district court erred in not giving judicial deference to the Fair Housing Accessibility Guidelines ("FHAG") under Chevron, U.S.A., Inc. v. Natural

14

<u>Resources Defense Council, Inc.</u>, 467 U.S. 837, 844, 104 S. Ct. 2278, 2782 (1984), which requires courts to defer to an administrative agency's reasonable interpretation of a statute it administers. Because Barker and Access Now demonstrated violations of the FHAG and Bolton did not demonstrate compliance with any alternate measure of accessibility, Barker and Access Now maintain that the district court should have granted judgment as a matter of law in their favor. In response, Bolton argues that Barker and Access Now failed to preserve some of these arguments in its original motion for judgment as a matter of law.

We review <u>de novo</u> the district court's denial of a motion for judgment as a matter of law. <u>See</u> <u>Action Marine</u>, 481 F.3d at 1309. A reversal requires the facts and inferences to be overwhelmingly in the moving party's favor "such that reasonable people could not arrive at a contrary verdict." <u>Id.</u> (quotation marks and citation omitted). In making a Rule 50(a) motion, the moving party must specify both the law and facts which entitle it to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 50(a)(2). A party may renew this motion after trial under Rule 50(b) but it may not raise new grounds. <u>See</u> <u>Shannon v. BellSouth Telecomms., Inc.</u>, 292 F.3d 712, 717 n.3 (11th Cir. 2002); <u>Middlebrooks v. Hillcrest Foods, Inc.</u>, 256 F.3d 1241, 1245 (11th Cir. 2001). We may affirm the denial of a Rule 50(b) motion on the basis that arguments were not previously raised in a Rule 50(a) motion. <u>See</u>

15

Middlebrooks, 256 F.3d at 1246.

At the close of evidence, Barker and Access Now argued that they were entitled to judgment as a matter of law on the following alleged design violations: (1) public and common use areas in which Bolton hired its landscape architect, Hughes, Good, O'Leary, and Ryan ("HGOR"); (2) lack of barrier rails below the standpipe; (3) thresholds; and (4) thermostat height. Barker and Access Now specifically acknowledged that the issue of clear floor space was a factual issue for the jury to decide. Although Barker and Access Now did not identify specific aspects of the public and common use areas which constituted design violations, their expert testified during trial that these included public pathways. In addition, Barker and Access Now referred to the issue of accessible paths during discussion of their Rule 50(a) motion. Accordingly, we will address Barker and Access Now's claims on appeal concerning public pathways, thresholds, and thermostat height.[2] We will not entertain any claims relating to clear floor space as Barker and Access Now conceded this was an issue for the jury when it argued its Rule 50(a) motion and the district court found that Barker and Access Now had failed to preserve this issue for review. See Middlebrooks, 256 F.3d at 1246.

_____

[2]As Barker and Access Now did not raise the issue of barrier rails below standpipes in their initial brief, that issue is now waived on appeal. See United States v. Curtis, 380 F.3d 1308, 1310 (11th Cir. 2004) (per curiam) (defendant waives issues not raised in the initial brief on appeal).

16

Furthermore, we will not entertain Appellant's argument that the district court should have given judicial deference to the FHAG. This argument was never raised by Barker and Access Now (nor addressed by the district court) in the Rule 50(a) motion or the renewed motion for judgment as a matter of law. When an issue is raised for the first time on appeal, we have discretion to either address the issue or consider it waived. See United States v. Dupree, 258 F.3d 1258, 1259 (11th Cir. 2001). We decline to address this issue as none of the exceptional conditions to a waiver apply in this case. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1332 (11th Cir. 2004) (issue may be considered for the first time on appeal when the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice, the appellant had no opportunity to raise the issue in district court, substantial justice is at stake, the issue's proper resolution is beyond any doubt, and the issue "presents significant questions of general impact or of great public concern") (citation omitted).

The FHA, as amended in 1988, prohibits discrimination based on handicap. See Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 (11th Cir. 2008). Discrimination under the FHA includes the failure to design and construct multifamily dwellings in such a manner that: (1) "the public use and common use portions of such dwellings are readily accessible to and usable by handicapped

17

persons"; (2) there is "an accessible route into and through the dwelling"; and (3)

thermostats are in accessible locations. See 42 U.S.C. § 3604(f)(3)(C)(i), (iii)(I),

(iii)(II). The Department of Housing and Urban Development has issued

guidelines, the FHAG, to assist builders and developers in complying with the

FHA. See 24 C.F.R. Ch. I, Subch. A., App. II (1991). The guidelines are not

mandatory, however, nor do they establish performance standards or minimum

requirements. See 24 C.F.R. Ch. I, Subch. A., App. III. Rather, the guidelines

constitute only one of several safe harbors for compliance with the FHA. See id.;

24 C.F.R. § 100.205(e)(2)(i) (2008).

Both parties cite Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc., 3

F. Supp. 2d 661 (D. Md. 1998), for the standard of liability under the FHA. The

court in that case interpreted the "design and construct" language broadly, holding

that "[w]hen a group of entities enters into the design and construction of a covered

dwelling, all participants in *the process as a whole* are bound to follow the [FHA]."

Baltimore Neighborhoods, 3 F. Supp. 2d at 665 (emphasis in original). The court

was careful to distinguish between liability based solely on participation in a joint

project (which it did not suggest) versus liability based on participation in actual

wrongdoing. See id. As an example, the court noted that an architect who

designed noncompliant plans and a builder who followed those plans would both

18

be liable as wrongful participants. See id. at n.2. If, on the other hand, the builder corrected those plans to comply with FHA regulations, then the builder would not be liable because he did not wrongfully participate in a FHA violation. See id.

Applying this standard here, the evidence supports the jury's finding that Bolton did not wrongfully contribute to any FHA violations. With respect to public pathways, Barker and Access Now argue that the walks and curb cuts contained slopes and cross-slopes exceeding the percentages recommended by various accessibility guidelines and that there was no level area in front of exterior entry doors. Bolton did not design the curb cuts, however. The civil engineers, not Bolton, were responsible for all the grading and elevation changes along the pathways, including the slopes and cross-slopes. Bolton and its landscape architect, HGOR, only designed the general location of the pathways and the aesthetic details such as brick color. Futhermore, Southern Civil Engineering contracted directly with TCR. Bolton's contract specifically excluded any civil engineering services or responsibility to review Southern Civil Engineering's designs for compliance with applicable accessibility laws. Viewing all the facts in the light most favorable to Bolton, there was sufficient evidence to support a jury's finding that Bolton did not wrongfully participate in a FHA violation with respect to the public pathways.

19

The next alleged violation is that of thresholds, which are the transitions between the outside and inside of entry doors. According to Barker and Access Now's expert, William Hecker ("Hecker"), the majority of the 432 dwelling units in the Clairmont Campus housing had thresholds which were too high. Rafael Garcia, Bolton's project manager for the Clairmont Campus project, testified that he utilized various safe harbor standards while designing the project but relied principally upon the FHAG. In his project manual, he instructed the contractor to purchase a specific brand of thresholds which complied with the FHA guidelines. Garcia also designed the floor of the breezeways to be level with the floor of the units. Nevertheless, after Garcia discovered in June 2001 that some of the breezeway floors had been poured too low, he notified TCR and Emory University of the problem and offered corrective solutions. Emory never authorized TCR to proceed with the corrective measures though. The jury could reasonably have concluded from this evidence that Bolton did not contribute to a FHA violation as to the thresholds.

A final matter concerns the height of the thermostats. According to Hecker, thermostats should be no higher than 54 inches from the floor in order to be handicapped-accessible from a side approach. Hecker's inspection of twelve representative units of the 432 dwellings revealed that most of the thermostats were

20

installed higher than 54 inches. Hecker admitted that he had not seen the design instructions for installing the thermostats, however. According to Bolton's project manual, thermostats were to be mounted 60 inches above the floor. Nevertheless, Garcia testified that he designed the thermostats to be mounted 54 inches above the floor and he issued a field report to this effect in February 2002. "It is the jury's task – not ours – to weigh conflicting evidence and inferences, and determine the credibility of witnesses." Shannon, 292 F.3d at 715 (quotation marks and citation omitted). The jury resolved the conflict in the evidence in favor of Bolton and we may not "substitute our judgment for its judgment." Id. (quotation marks and citation omitted).

Based on the foregoing, we conclude the district court correctly denied Barker and Access Now's motion for judgment as a matter of law against Bolton.

C. Nominal Damages

Barker and Access Now contend that the district court erred in not awarding nominal damages of one dollar based on the jury's finding that TCR violated Barker's rights under the Fair Housing Act. At trial, the district court instructed the jury that it must award nominal damages if it found a FHA violation but no other damages. Nevertheless, the verdict form did not mention nominal damages and Barker and Access Now did not object to the form. After the jury's verdict,

21

Barker argued that she was entitled to nominal damages of one dollar. The district court denied Barker's request, which it construed as a motion for additur, on the grounds that a FHA violation is a statutory, non-constitutional violation that does not require nominal damages. Moreover, the district court found that Barker had waived the issue by failing to object to the verdict form.

We review the district court's legal conclusions de novo. See Pelphrey v. Cobb County, Georgia, 547 F.3d 1263, 1268 (11th Cir. 2008). We review the size of the damages verdict for clear error. See Bravo v. United States, 532 F.3d 1154, 1160 (11th Cir. 2008). "Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Pelphrey, 547 F.3d at 1282 (quotation marks and citation omitted). For example, we have affirmed the award of nominal damages for violations of the Establishment Clause of the First Amendment. See Pelphrey, 547 F.3d at 1282; see also KH Outdoor, LLC v. City of Trussville, 465 F.3d 1256, 1262 (11th Cir. 2006) (nominal damages warranted because city ordinance impermissibly discriminated based on the content of speech in violation of the First Amendment). On the other hand, we have declined to award nominal damages where only a statutory right has been violated. See, e.g., Walker v. Anderson Elec. Connectors, 944 F.2d 841, 845 (11th Cir. 1991)

22

(nominal damages not mandated for sexual harassment violation of Title VII because such violation involves "purely statutory rights").

As in <u>Walker</u>, nominal damages are not required here because this case involves only a violation of statutory rights, not constitutional rights.[3]  The jury found that TCR violated Barker's rights under the FHA, which stems from 42 U.S.C. § 3604.  A violation of the FHA does not equate to a violation of a fundamental constitutional right.  <u>See</u> <u>Louisiana ACORN Fair Housing v. LeBlanc</u>, 211 F.3d 298, 303-04 (5th Cir. 2000) (concluding that nominal damages not required for FHA violation because no constitutional right violated).  Furthermore, "[t]he federal court's long standing policy against additur, as an intrusion on the jury's domain and violation of the Seventh Amendment, also stands in the way of [Barker]'s request for one dollar in nominal damages where the jury awarded none."  <u>Walker</u>, 944 F.2d at 845.  Accordingly, the district court correctly declined to award Barker nominal damages.

---

[3]Although our controlling precedent requires that a constitutional right be violated in order to mandate nominal damages, we recognize that other circuits permit nominal damages for a FHA violation alone.  <u>See</u> <u>Hamad v. Woodcrest Condo. Ass'n</u>, 328 F.3d 224, 237 (6th Cir. 2003) (nominal damages for FHA violation appropriate if plaintiffs prove defendants caused them a non-quantifiable injury); <u>Cabrera v. Jakabovitz</u>, 24 F.3d 372, 391 (2d Cir. 1994) (nominal damages can be awarded where jury found FHA violated by racial discrimination in housing rental).  <u>See also</u> <u>Alexander v. Riga</u>, 208 F.3d 419, 429 (3d Cir. 2000) (suggesting in dicta that nominal damages may be appropriate for a FHA violation based on racial discrimination given that "the inability to buy or lease real property can be considered one of the badges and incidents of slavery").

23

D.  Attorney's Fees for Access Now

Access Now contends that the district court abused its discretion in significantly reducing its request for attorney's fees.  Specifically, Access Now maintains the district court did not adequately explain why it adjusted trial counsel Matthew Dietz's hours from 1730 to 1215.1 and then further reduced the lodestar amount by seventy-five percent.

We review a district court's award of attorney's fees for abuse of discretion. See Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1351 (11th Cir. 2008) (per curiam). The district court's legal conclusions are reviewed de novo and its factual findings for clear error.  See id.  We must remand if the district court fails to explain clearly and concisely any reductions to the requested hours.  See id.

The Fair Housing Act permits a court to award a reasonable attorney's fee and costs to a prevailing party.  See 42 U.S.C. § 3613(c)(2).  The parties do not dispute that Access Now is a prevailing party against TCR.  To determine the amount of a reasonable fee, a court first calculates the lodestar, which is the "'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  See Bivins, 548 F.3d at 1350 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).  A court should consider the following twelve factors in ascertaining what constitutes a reasonable

amount of hours and rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 1350 n.2.

Calculating the lodestar does not end the analysis, however. A district court may adjust the lodestar based on other considerations, the most critical factor being "the degree of success obtained." Hensley, 461 U.S. at 436, 103 S. Ct. at 1941. Where a plaintiff has achieved only partial or limited success, the lodestar may be excessive. See id. A reduction is then appropriate even if the plaintiff's claims were "interrelated, non-frivolous, and raised in good faith." Id. The Supreme Court has acknowledged that "[t]here is no precise rule or formula for making these determinations." Id. Accordingly, it is within the district court's discretion, upon consideration of the aforementioned factors, to decide whether to identify specific hours to be eliminated or simply to reduce the fee award to account for the limited success. See id.

In this case, the district court did not attempt to identify the specific hours to be eliminated because Access Now's various claims were interrelated, "'making it difficult to divide the hours expended on a claim-by-claim basis.'" R19-425 at 6 (quoting Hensley, 461 U.S. at 435, 103 S. Ct. at 1940). The district court found that the hours spent by Access Now's counsel on the litigation as a whole were reasonable but adjusted them to reflect the actual billing records submitted by Access Now's attorneys. Access Now erroneously states in its appeal brief that the district court reduced Matthew Dietz's hours from 1730 to 1215.1. According to Dietz's own declaration, he only expended 1279.9 hours on the case, which the court reduced to 1215.1 hours based on his billing records. Thus, the district court adjusted Dietz's time by approximately 65 hours, not by 500 hours as Access Now contends.

After determining the total amount of reasonable hours and the reasonable hourly rates, the district court calculated the lodestar to be $514,459.25. The court concluded this amount was excessive, however, in light of the results achieved. Consequently, the court reduced the lodestar "by 75% to account for the limited success in this case and the fact that several other claims and parties were at issue in the litigation." R19-425 at 7. The court awarded Access Now $46,744.81 in attorney's fees, which reflected an award of $128,614.81 reduced by the amount

26

attributable to the settlement with Emory.[4]

The district court did not clearly abuse its discretion in this case. The hours claimed by Access Now in its fee request were not limited to its single claim against TCR of an FHA violation, for which it was awarded $1,675 in compensatory damages. Rather, the billing records included the hours and fees for the work performed by the attorneys for both Access Now and Barker on all their claims in the complaint against both TCR and Bolton. Access Now was unsuccessful in any claim against Bolton and in several other claims against TCR, including claims for punitive damages, violation of the Georgia Fair Housing Act, and violation of O.C.G.A. § 51-6-1. The district court thus properly exercised its discretion to reduce the lodestar to account for Access Now's partial success and adequately explained its decision for doing so. See Hensley, 461 U.S. at 436-37, 103 S. Ct. at 1941; Bivins, 548 F.3d at 1352 (noting that downward adjustment in lodestar is warranted if the plaintiff was only partially successful in his claims). Accordingly, we affirm the district court's award of attorney's fees to Access Now.

## III. CONCLUSION

Barker and Access Now appeal the district court's orders denying their motion for new trial and motion for judgment as a matter of law. We conclude that

---

[4]Access Now acknowledged in its petition for attorney's fees that this settlement amount should be deducted from its total fees and costs.

a new trial was unwarranted because the district court properly admitted the redacted settlement agreement and evidence of subsequent remedial measures; the court did not abuse its discretion in restricting the cross-examination of a witness about other accessibility codes; and the court correctly instructed the jury on emotional distress damages. We further conclude that the evidence supported the district court's denial of the motion for judgment as a matter of law against Bolton. Finally, we agree with the district court that nominal damages were not required in the absence of a constitutional violation and we find no abuse of discretion in the court's award of attorney's fees to Access Now. Accordingly, we AFFIRM.

AFFIRMED.