CARVER MIDDLE SCHOOL GAY-STRAIGHT ALLIANCE, an Unincorporated Association, and H.F., a Minor by and through Parent Janine Faughnan, Plaintiffs,

v.

SCHOOL BOARD OF LAKE COUNTY, FLORIDA, Defendant.

Case No. 5:13-cv-623-Oc-10PRL

United States District Court, M.D. Florida.

Signed April 12, 2017

have learned of and requested the electronic information in an appropriate manner prior to the close of discovery.

Benjamin James Stevenson, ACLU Foundation of Florida, Inc., Pensacola, FL, Daniel B. Tilley, ACLU Foundation of Florida, Inc., Miami, FL, Leslie Cooper, Pro Hac Vice, American Civil Liberties Union Foundation, Inc., New York, NY, for Plaintiffs.

Stephanie Jo McCulloch, Stephen Warfield Johnson, McLin & Burnsed, PA, Leesburg, FL, for Defendant.

## ORDER ON REMAND

Wm. Terrell Hodges, UNITED STATES DISTRICT JUDGE

Carver Middle School Gay–Straight Alliance (GSA) and one of its members, a student at Carver Middle School in Lake County, acting through her parent, filed this action against the Lake County School Board in December of 2013. (Doc. 1). The dispute involved a refusal by the School Board to recognize the GSA as a school sponsored club at Carver Middle School for the 2013–2014 school year.

The complaint sought a declaratory judgment, injunctive relief and nominal damages. Id. It asserted two legal theories as a basis for seeking those remedies. One theory was that the School Board's failure to recognize the GSA as a school approved club was a violation of the Equal Access Act, 20 U.S.C. §§ 4071–4074,[1] and the second theory was that the School Board's refusal was a violation of the Plaintiffs' rights under the First Amendment to the Constitution of the United States.

### This Court's Decision

The case was tried before the Court without a jury, and in August of 2015, the Court filed its decision in the form of a memorandum opinion including findings of fact and conclusions of law. (Doc. 75). Judgment was entered for the School Board. (Doc. 76) Carver Middle School Gay–Straight Alliance v. School Board of Lake County, 124 F.Supp.3d 1254 (M.D. Fla. 2015)). The Court held that the action was non-justiciable because it was not ripe as a case or controversy at the time it was filed;[2] and, in any event, that the controversy had become moot.[3]

Alternatively, addressing the merits of the case, the Court held that the claim

---

1. The Equal Access Act, 20 U.S.C. §§ 4071–4072, provides in pertinent part that: It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within the limited open forum on the basis of religious, political, philosophical, or other content of the speech at such meetings.

 (b) "Limited open forum" defined
 A public secondary school has a limited open forum whenever such school grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time. 20 U.S.C. §§ 4071(a), (b).
 As used in this subchapter—
 (1) The term "secondary school" means a public school which provides secondary education as determined by State law.
 20 U.S.C. § 4072(1).

2. There was undisputed evidence and the Court found that when the GSA application was submitted and rejected, the GSA faculty sponsor was told that if the form was resubmitted with a more complete explanation of the club's objective of promoting "critical thinking," it could or would be approved. The GSA elected instead to proceed with litigation. (See Doc. 75, pages 14–15; 124 F.Supp.3d at 1262–1263).

3. The application of the GSA at issue was submitted for the school year 2013–2014. No subsequent application had been made for any school year since 2014 so that when the case was ready for decision, the operative school year had already passed and a declaratory decree with injunctive relief was no longer a viable remedy. The Court of Appeals agreed that the minor Plaintiff's claims for declaratory and injunctive relief were moot, and that such relief "may be foreclosed to the Alliance..." 842 F.3d at 1330. The holding of

under the Equal Access Act failed because the Act by its terms simply did not apply to Carver Middle School. Similarly, with respect to the Constitutional claim, this Court applied the relevant Supreme Court precedents beginning with Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) and ending with Hazelwood School District v. Kuhlmeier, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988), and held that there was no infringement of the First Amendment.

### The Decision on Appeal

The Court of Appeals found that the Equal Access Act was applicable to Carver Middle School; that the GSA's claim for nominal damages caused by its rejection as a school sponsored club for the school year 2013–2014 was ripe for adjudication at the time suit was filed; and the claim for nominal damages for that school year was justiciable, not moot. Carver Middle School Gay–Straight Alliance v. School Board of Lake County, 842 F.3d 1324 (11th Cir. 2016).

The Court of Appeals therefore vacated the "order that dismissed the complaint under the Equal Access Act"[4] and remanded for further proceedings consistent with the Court's opinion. 842 F.3d at 1333. Specifically, with regard to the claim under the Equal Access Act, the Court of Appeals directed this Court to determine (1) whether there is a private right of action under the Act; and (2) whether the GSA

has organizational standing to pursue prospective relief.

### Post Appeal Proceedings

Upon remand of the case, this Court conducted a hearing to discuss with counsel the future progress of the litigation. Afterward, the Court entered an order (Doc. 94) directing the Plaintiff to file, as it had expressed a willingness and desire to do, a new application for recognition as a school sponsored club at Carver Middle School. The School Board was directed, in turn, to respond to the application by a certain date. Id. Additionally, the Plaintiff was directed to file a motion or other pleading setting out its view of the precise issues remaining for determination together with the Plaintiff's legal arguments concerning such issues. Id. The School Board was allowed time to respond.

Pursuant to those directives, the GSA filed its application for recognition as an approved club at Carver Middle School (Doc 95), and the School Board approved it. (Doc. 96).[5] As of now, therefore, the GSA is a recognized club at Carver Middle School.

With respect to the GSA's specification of the issues remaining to be determined, as directed in the Court's order (Doc. 94), the GSA identified three questions (Doc. 98, pages 2–3):

(1) Is the Carver GSA [and the minor Plaintiff] entitled to an award of $1 in damages?

---

the Court was that the Plaintiffs' "demands for nominal damages are not moot." Id.

4. The GSA did not appeal from this Court's dismissal of the Constitutional claims. See 842 F.3d at 1326.

5. The Court previously determined at the outset of the litigation in ruling on the School Board's motion to dismiss (See Doc. 17) that the GSA had organizational standing to pursue the relief sought with respect to the

school year 2013–2014. The application filed subsequent to the remand from the Court of Appeals was joined by a minor member of the GSA, and was approved by the School Board without challenge to the GSA's standing. In accordance with the directive of the Court of Appeals, therefore, and for the reasons stated in Doc. 17, the Court finds that the GSA had organizational standing to pursue prospective relief for the school year 2016–2017.

(2) Is the Carver GSA the prevailing party entitled to an award of reasonable attorney's fees under § 1988?

(3) Are lodestar attorney's fees reasonable?

## A.

 In addition to those enumerated issues, the GSA also presented argument on one of the questions that the Court of Appeals expressly left for this Court to resolve in the first instance on remand, namely, "whether the Equal Access Act affords a private right to relief, monetary or otherwise." 842 F.3d at 1331.

On that point, the GSA persuasively relies upon Schwier v. Cox, 340 F.3d 1284 (11th Cir. 2003) as a definitive explication of the relevant law of the Circuit leading to the conclusion that 42 U.S.C. § 1983 creates a private right of action to enforce the Equal Access Act.[6] The Court agrees. While the Equal Access Act does not contain any mechanism for enforcement of its provisions, it clearly embodies each of the three elements identified in Schwier as necessary to a determination that § 1983 fills that procedural void: (1) Congress in the Equal Access Act specifically intended to benefit secondary "school students who wish to conduct a meeting within [the school's] limited open forum..." as defined by the statute, 20 U.S.C. § 4071; (2) the right protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the statute imposes a binding obligation on the states that is couched in mandatory, not precatory, terms. See 340 F.3d at 1290.

## B.

Both parties have moved in their post remand pleadings for partial summary judgment on the Plaintiff's claims for nominal damages under the Equal Access Act. (Doc. 98, page 17; Doc. 102, page 9).

It is now the settled law of the case under the decision and mandate of the Court of Appeals that the Equal Access Act applies—and did apply when this suit was filed—to the Carver Middle School; that the claim was a justiciable case or controversy that was "ripe" for judicial decision; and that the claim for nominal damages did not become moot. Additionally, the Court has now determined in this order that 42 U.S.C. § 1983 supplies a procedural mechanism or cause of action for litigating violations of the Equal Access Act. Finally, in its prior opinion (Doc. 75, page 27; 124 F.Supp.3d at 1269–1270) this Court found that "[t]he rejection of the GSA application was necessarily predicated upon the content of the expressive activity or associational rights intended to be exercised by the GSA as stated in its charter." That finding, which is not disturbed by anything in the Court of Appeals opinion, inexorably translates into a violation of the Equal Access Act. The Act says, with respect to "any students who wish to conduct a meeting," that it shall be unlawful for a school subject to the Act to deny equal access to school recognition based upon the "content of the speech at such meetings." 20 U.S.C. § 4071(a). And that statutory proscription has both a positive as well as a negative aspect: it precludes any attempt by the school to dictate what the speech must be, just as it precludes any attempt by the school to man-

6. The School Board, in its response (Doc. 102), offered no contrary argument on this issue.

date what the speech cannot be except as permitted by § 4071(f).[7]

## C.

■ The School Board argues, however, that even if there was a violation of the Equal Access Act, nominal damages may be awarded only for Constitutional infringements, not statutory violations. This says too much and is not the law.

In Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court held that proof of a violation of a fundamental Constitutional right mandated an award of nominal damages to the victim in the absence of any proof of actual injury. This rule has been consistently applied in the Eleventh Circuit where a Constitutional violation has been found. E.g., Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003); KH Outdoor LLC v. City of Trussville, 465 F.3d 1256, 1261 (11th Cir. 2006); Pelphrey v. Cobb County, Georgia, 547 F.3d 1263, 1282 (11th Cir. 2008).

The School Board relies upon two decisions in the Circuit in which statements are made that nominal damages should be awarded for fundamental Constitutional violations under the authority of Carey v. Piphus, but are not mandated for statutory violations. Walker v. Anderson Electrical Connectors, 944 F.2d 841 (11th Cir. 1991), and Barker v. Niles Bolton Associates, Inc., 316 Fed.Appx. 933 (11th Cir. 2009).[8]

The key word in that formulation is "mandated." Nominal damages are not required as a remedy for the enforcement of statutory rights as they are under Carey for Constitutional violations,[9] but that does not mean that such damages are prohibited in statutory cases. Neither Walker or Barker so hold, and both are distinguishable from this case.

In Walker, the Court of Appeals refused to approve a nominal damages award to the plaintiff in a Title VII employment discrimination case. The jury found for the plaintiff, but awarded no damages. The plaintiff then sought, by a post trial motion, entry of a judgment for nominal damages. The Court of Appeals affirmed the district court's denial of that motion, not because nominal damages were unavailable as a matter of law, but because the plaintiff—apparently as a deliberate trial strategy—had never requested nominal damages in the complaint, or in the pretrial order, or in the jury instructions and accompanying special verdict form.[10]

Barker involved facts that were very similar to those in Walker. It was a Fair Housing Act case in which the jury found a violation of the Act but awarded no compensatory damages, and the special verdict form, to which the plaintiff had made no objection, did not mention nominal damages. The plaintiff nonetheless sought nominal damages through a post trial mo-

---

7. 20 U.S.C. § 4071(f) provides: "Nothing in this subchapter shall be construed to limit the authority of the school, its agents or employees, to maintain order and discipline on school premises, to protect the well-being of students and faculty, and to assure the attendance of students at meetings is voluntary."

8. Unpublished decisions in the Eleventh Circuit are not binding precedent, but may be cited as persuasive authority. Fed.R.App.P. 32.1; Eleventh Circuit Rule 36-2.

9. The Court of Appeals made that point in discussing GSA's claim for nominal damages. See, Carver, 842 F.3d at 1331.

10. The Court noted the provision in Rule 54(c) of the Federal Rules of Civil Procedure that, excluding default judgments, every other judgment should award the relief to which a party is "entitled" whether such relief has been demanded or not. The Court held that the rule simply did not apply in the factual circumstances presented in Walker because the plaintiff was not "entitled" to nominal damages in those circumstances.

tion which the district court denied. The Court of Appeals affirmed by holding, not that nominal damages are unavailable for a statutory violation, but that such damages are not <u>required</u> in statutory cases and that the plaintiff had waived the claim by its conduct.

Nominal damages are therefore appropriate when they are consistently sought as a remedy in a case involving federal rights being enforced by an action brought under 42 U.S.C. § 1983. And here, unlike both <u>Walker</u> and <u>Barker</u>, the GSA specifically asserted in its complaint a prayer for nominal damages as one of the remedies being demanded (Doc. 1, page 15 ¶ F) and it has not subsequently taken any position or made any argument that could rightly be construed as an abandonment, or a waiver of that remedy.

**D.**

■ That leaves the question . whether, if an award of nominal damages is an available remedy in civil rights cases in general, may such damages be awarded in Equal Access Act cases in particular? The Court of Appeals noted that the Eleventh Circuit has suggested that nominal damages are available for violations of other statutes, but has not addressed the question under the Equal Access Act. The Court therefore deferred that issue to be resolved in the first instance by this Court. See 842 F.3d at 1331.

Title 42 U.S.C. § 1983, by its clear and unambiguous terms, creates a cause of action for violations of "the Constitution <u>and</u> <u>laws</u> . . . in an action <u>at law</u>, suit in equity, or other proper proceeding. . ." (emphasis supplied). The Supreme Court has repeatedly recognized that this statutory lan-

guage creates a species of tort liability, City of Monterey v. Del Monte Dunes, 526 U.S. 687, 711–712, 119 S.Ct. 1624, 1639, 143 L.Ed.2d 882 (1999) (and decisions there cited) authorizing actions for damages. The Eleventh Circuit has repeatedly affirmed awards of nominal damages in § 1983 cases. See, e.g., Slicker v. Jackson, 215 F.3d 1225 (11th Cir. 2015); KH Outdoor, LLC v. City of Trussville, 465 F.3d 1256 (11th Cir. 2006); Brooks v. Warden, 800 F.3d 1295 (11th Cir. 2016). These decisions involved Constitutional violations, but no distinction is drawn between the remedies available under § 1983 for Constitutional and statutory violations, except the one already noted, namely, that nominal damages as a minimum must be awarded for Constitutional infringements, but are not required for statutory violations. And here, unlike in <u>Walker</u> and <u>Barker</u>, the GSA sought nominal damages in the Complaint (Doc. 1, page 15, ¶ F) and continues to seek that relief now, after the holding of the Court of Appeals that the prayer for nominal damages became ripe and is not moot.

■ There does not appear to be any reasoned decision discussing the availability of nominal damages under the Equal Access Act by way of an action under § 1983;[11] but, by the same token, there is no authority suggesting in any way that nominal damages should not be recoverable when timely sought in Equal Access cases and the plaintiff has not abandoned or waived the claim by its tactics in conducting the litigation. On the contrary, the Equal Access Act is a remedial statute and, as such, should be broadly construed to accomplish its remedial objective. E.g., Agrelo v. Affinity Management Services,

---

11. In <u>Pope v. East Brunswick Board of Education</u>, 12 F.3d 1244, 1248, n. 3 (3d Cir. 1993), the Third Circuit amended a judgment in a case governed by the Equal Access Act,

by adding pursuant to a stipulation of the parties, an award of nominal damages to the plaintiff in order to make the judgment final and appealable.

LLC, 841 F.3d 944, 950 (11th Cir. 2016); Caro–Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1505 (11th Cir. 1993); Herpich v. Wallace, 430 F.2d 792, 802 (5th Cir. 1970).[12]

The Court therefore holds that nominal damages are recoverable under the Equal Access Act through 42 U.S.C. § 1983 when diligently sought by a plaintiff who successfully proves a violation of the Act and has not waived the claim by its conduct. It follows that judgment will be entered in favor of the GSA and the minor Plaintiff against the School Board in the amount of $1.00.

**E.**

In addition to its motion (Doc. 98) filed in response to the Court's Order (Doc. 94) entered after remand from the Court of Appeals, the GSA has also filed a "Motion for Limited Discovery and Leave to File Briefing." (Doc. 104). The School Board has not filed a response, but none is necessary. The Court will deny the GSA motion. The unspoken issue raised by the GSA in its motion is whether the Court should grant some form of declaratory or injunctive relief in favor of the GSA and against the School Board with respect to future school years, and it anticipates that the School Board will argue a "voluntary cessation" defense. But that is not the whole of the problem.

The Court has previously determined (Doc. 75, page 3), and the Court of Appeals reiterated, 842 F.3d at 1327, that all clubs at Carver Middle School, in order to achieve recognition as school sponsored organizations, must apply and be approved for each school year. At present, therefore, the only injunctive relief that the Court could grant—quite apart from any decision on the issue of voluntary cessation—would effectively be an "obey the law" proscription, a form of decree that the Eleventh Circuit has uniformly refused to approve. E.g., Securities and Exchange Commission v. Graham, 823 F.3d 1357 (11th Cir. 2016); Elend v. Basham, 471 F.3d 1199 (11th Cir. 2006); Hughey v. JMS Development Corp., 78 F.3d 1523 (11th Cir. 1996). To be recognized as a school sponsored club for the next school year, 2017–2018, subject to injunctive enforcement, the GSA must continue to maintain its jurisprudential standing, state law must remain unchanged with respect to the state's categorization of "secondary schools" or "secondary education," other clubs must continue to be approved or sponsored at Carver Middle School,[13] and the GSA must submit an application to be accepted as one of those clubs. Any present injunction, therefore, would have to be conditioned upon fulfillment of those contingencies and would be reduced in the process to a disfavored "obey the law" decree.

The Court can and will, however, enter a final declaratory judgment, effectuating the decision of the Court of Appeals, that the Carver Middle School as it was structured and operated during the school year 2013–2014, was a public school providing a

---

12. Decisions of the Fifth Circuit decided before October 1, 1981, constitute the law of the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981).

13. In Pope v. East Brunswick Board of Education, n. 11, the Third Circuit noted (12 F.3d at 1254):

Although it has failed to do so yet, East Brunswick remains free to wipe out all of its noncurriculum related student groups and totally close its forum. While that option may be antithetical to progressive concepts of education, that cost, like the rejection of federal funds, is the burden that Congress imposed on school districts that do not wish to allow religious and other student groups equal access to their facilities.

secondary education as determined by State law, and was subject to the terms, prohibitions and requirements of the Equal Access Act, 20 U.S.C. § 407 et. seq.

## F.

The next issue, then, is whether the GSA is a prevailing party so as to be entitled to an award of attorney's fees under 42 U.S.C. § 1988. Clearly, the GSA is a prevailing party for at least two reasons. First, an award of nominal damages is sufficient to earn that distinction. Farrar v. Hobby, 506 U.S. 103, 112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) ("We therefore hold that a prevailing party who wins nominal damages is a prevailing party under § 1988."). Second, the determination of the Court of Appeals that the Equal Access Act is applicable to Carver Middle School (reversing this Court's holding to the contrary) worked a "material alteration of the legal relationship of the parties," Farrar, 506 U.S. at 111, 113 S.Ct. at 573, which the Court described as "the touchstone of the prevailing party inquiry." Id. See also Sole v. Wyner, 551 U.S. 74, 82, 127 S.Ct. 2188, 2194, 167 L.Ed.2d 1069 (2007); and Common Cause/Georgia v. Billups, 554 F.3d 1340, 1356 (11th Cir. 2009). The GSA claimed that the Equal Access Act applied and was violated. The School Board claimed that the Act did not apply and, in any event, was not violated. The School Board has lost, and in the process there has been an indisputable change in the legal relationship of the parties, not only for the present but also for the future. Absent a material change in circumstances, Carver Middle School is now and will continue to be governed by the Equal Access Act.

## G.

Finally, one of the issues specified by the GSA is whether the measure of the reasonable attorneys fees to be awarded to it as the prevailing party under 42 U.S.C. § 1988 should be the "lodestar" method or some other approach relating to the assessment of fees. On that point the law is settled. The lodestar approach is the approved method. E.g., Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); City of Monterey, supra, 526 U.S. at 711–712, 119 S.Ct. at 1639; Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292 (11th Cir. 1988).

The School Board, as it must, concedes that much (Doc. 102, page 8) but argues that the lodestar method (or the result it produces) can be subject to adjustment based upon an evaluation of the result obtained in relation to the result that was sought, and adjustments based upon the reasonableness of the time expended and the reasonableness of the hourly rate to be applied. Any decision at this time concerning those factors would obviously be premature. Suffice it to say at this point that the lodestar method will be applied with the ultimate amount to be awarded as attorney's fees being subject to possible adjustment in accordance with the evidence and the applicable law to be developed in subsequent proceedings.

## Conclusion

1. With respect to the issue of nominal damages, the Plaintiffs' Motion for Partial Summary Judgment (Doc. 98) is **GRANTED,** and the School Board's Motion for Partial Summary Judgment (Doc. 102) is **DENIED.** Judgment will be entered in favor of the Plaintiffs and against the School Board in the amount of $1.00.

2. With respect to the Plaintiffs' prayer for a declaratory judgment (Doc. 1, page 14, ¶ A), and pursuant to the opinion and mandate of the Court of

Appeals (Doc. 89), a judgment will be entered declaring that the Carver Middle School as it was structured and operated during the school year 2013–2014 was a public school providing a secondary education as determined by state law, and was subject to the terms, prohibitions and requirements of the Equal Access Act, 20 U.S.C. § 407 et. seq.

3. In order to minimize the likelihood of multiple appeals, the entry of such judgments will be withheld until all remaining issues have been resolved. A plenary final judgment will be entered at that time. See Rule 54(b) of the Federal Rules of Civil Procedure.

4. The Plaintiffs' Motion for Limited Discovery and Leave to File Briefing (Doc. 104) is **DENIED.**

5. The Court notes that, on this date, the Court of Appeals has transferred to this Court the Plaintiffs' motion for attorneys' fees and litigation expenses on the appeal. (Doc. 105 and 106). Ruling is reserved on that motion which shall be subject to and a part of the procedures hereafter provided with respect to the Plaintiffs' anticipated motion for an award of attorneys' fees for services rendered in this Court.

6. The Parties are directed to meet and then file, within **TWENTY (20) DAYS** from the date of this Order, an agreed schedule of dates (subject to court approval) for the accomplishment of the following steps at the earliest practicable times:

(a) Filing by the Plaintiffs of whatever motion the Plaintiffs may wish to make, as prevailing parties under 42 U.S.C. § 1988, for an award of attorneys fees. See Rule 54(d)(2) of the Federal Rules of Civil Procedure. The Motion shall include, or be accompanied by, separate schedules showing as to each attorney or paralegal performing work in the litigation, the number of hours being claimed for each, the dates on which such hours were expended, a description of the tasks performed during those hours, and the hourly rate being sought for such hours. The motion must be submitted with affidavit(s) or declaration(s) under oath by person(s) with knowledge or expertise attesting to the accuracy of the information contained in the schedules including the reasonableness of the hourly rates being sought. See Rule 43(c) of the Federal Rules of Civil Procedure.

(b) The taking and filing of oral depositions by the Defendant of any or all of the affiants whose declarations under oath form a part of the Plaintiffs' filing under subparagraph (a).

(c) Filing by the Defendant of its response to the Plaintiffs' motion under subparagraph (a). Any denial by the Defendant of the reasonableness of any hours of work claimed by the Plaintiffs, and/or any denial of the reasonableness of the hourly rates being claimed by the Plaintiffs, shall be supported by affidavit(s) or declaration(s) under oath stating the number of hours if any, that would be reasonable for accomplishment of the disputed hours or tasks and/or the hourly rates that would be reasonable for the work performed.

(d) The taking and filing of oral depositions by the Plaintiffs of any

or all of the affiants whose declarations under oath form a part of the Defendant's filing under subparagraph (c).

(e) Filing by the Plaintiffs of their reply to the Defendant's filing under subparagraph (c). Plaintiffs' reply shall be limited to legal argument concerning the evidentiary materials already forming a part of the record and shall not include any new or supplemental affidavits or other evidence. See Rule 54(d)(2)(A) of the Federal Rules of Civil Procedure.

(f) The Court will then take the matter of the Plaintiffs' claim for attorneys' fees under submission for decision with or without such additional proceedings as the Court may direct.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 12th day of April, 2017.